[No. 9876. Department One. — June 16, 1888.]

## JOHN MALONE, RESPONDENT, v. BIG FLAT GRAVEL MINING COMPANY ET AL., APPELLANTS.

MECHANIC'S LIEN — STATEMENT OF CONTRACT IN NOTICE OF LIEN — VARIANCE. — The contract stated in the notice of lien must be the same in all essentials as the contract stated in the complaint. It is a fatal variance if the complaint is on a *quantum meruit*, and the contract stated in the notice is for a fixed price.

JOINDER OF CAUSES OF ACTION. — If several placer-mining claims are adjoining each other, and are owned by one company and worked as one mine, the liens of different persons upon different portions of the property may be joined in the same action, the counts being separately stated.

NOTICE OF LIEN — STATEMENT AS TO PERSON BY WHOM CLAIMANT WAS EMPLOYED — NOTICE TO BE LIBERALLY CONSTRUED. — The requirement as to stating the name of the person by whom the claimant was employed is satisfied if the statement is sufficient to inform the owner whether the claimant is an original or a sub contractor. The notice is to be liberally construed.

LIENABLE CLAIMS — WORK UPON TOOLS AND MACHINERY. — Tools and machinery used in the development of the mine are, while so used, to be considered as affixed to the mine; and work upon such tools and machinery is work upon the mine.

ID. — CONTRACTOR FOR LABOR — STATEMENT IN NOTICE. — If the contract is that the contractor shall furnish so much labor, and receive a certain sum per man, the liability being directly to the contractor, he has a lien for the sum due, and the notice of lien properly states the contract as being with such contractor, instead of with the laborers individually; otherwise if such contractor simply acts the part of an employment office.

ID. — LABOR — LIEN FOR TOO MUCH. — If labor has a legitimate connection with the working of the mine, it is sufficient. A claim for too much does not vitiate the lien for what is due.

LABOR BY THE MONTH — TERMINATION OF EMPLOYMENT — TIME OF FILING LIEN. — Where a laborer works by the month, the employment does not terminate at the end of each month; and separate notices within thirty days from the end of each month are not required.

APPEAL from a judgment of the Superior Court of Del Norte County, and from an order refusing a new trial.

The facts are stated in the opinion.

*W. H. H. Hart*, and *William H. Fifield*, for Appellants.

The statute did not permit the joinder in this action of the several causes of action of the lienors, as their liens were against distinct parcels of land. (Code Civ. Proc., ed. of 1880, secs. 1183, 1188; Phillips on Mechanics' Liens, secs. 376, 377, 392, 401, 402; Jones on Mortgages, sec. 1284; *Peck* v. *Hapgood*, 10 Met. 172; *Pierce* v. *Balkum*, 2 Cush. 374; 2 Hill on Mortgages, 4th ed., sec. 124.) The liens were defective because they did not set forth the name of the person by whom the lienors were employed. (Code Civ. Proc., sec. 1187; *Wood* v. *Wrede*, 46 Cal. 637; *Hooper* v. *Flood*, 54 Cal. 218; *McIntyre* v. *Trautner*, 63 Cal. 429; *McDonald* v. *Backus*, 45 Cal. 262; *Hicks* v. *Murray*, 43 Cal. 515; *Phelps* v. *M. C. G. M. Co.*, 49 Cal. 339.) Work done on the tools did not constitute work on the mining claim. (*McCormick* v. *Los Angeles W. Co.*, 40 Cal. 185.)

*Daniel Titus*, and *L. F. Cooper*, for Respondent.

The lienors were entitled to liens on the entire mining ground, and the joinder of their causes of action was proper. (*Dickenson* v. *Bolyer*, 55 Cal. 285; *Tredinnick* v.

*Red Cloud M. Co.,* 72 Cal. 78; Phillips on Mechanics' Liens, sec. 369; *Pennock* v. *Hoover,* 5 Rawle, 291; *Taylor* v. *Montgomery,* 20 Pa. St. 443; *Moran* v. *Chase,* 52 N. Y. 346; *Phillips* v. *Gilbert,* 101 U. S. 721; *Orr* v. *N. W. Mut. L. Ins. Co.,* 86 Ill. 260; *Hall* v. *Sheelan,* 69 N. Y. 618; *Chadborn* v. *Williams,* 71 N. C. 444; *Marston* v. *Kenyon,* 44 Conn. 349; *Wall* v. *Robinson,* 115 Mass. 429; *Worthley* v. *Emerson,* 116 Mass. 374; *Batchelder* v. *Rand,* 117 Mass. 176; *Childs* v. *Anderson,* 128 Mass. 109; *Turner* v. *Wentworth,* 119 Mass. 459; *Paine* v. *Bonney,* 6 Abb. Pr. 101.) The contractor to furnish men was entitled to a lien. (*Palmer* v. *Uncas M. Co.,* 70 Cal. 614.)

HAYNE, C.—Suit to foreclose laborers' liens. The plaintiff is the assignee of twenty-six liens for labor performed upon certain mining claims owned and operated by the Big Flat Gravel Mining Company. The proceedings arose under and are to be governed by the law as it stood in 1880. Each lien is set up in a separate count. The court below gave judgment for the plaintiff, and the appeal is by the company and one Paris, who held a judgment lien.

1. The contract set forth in the notices of lien are different from the contracts set forth in the complaint. The notices all set forth contracts for labor at a fixed rate. The lien of Heath, which is the first in the complaint, may be taken as a type of them all. Its statement of the contract is as follows, viz.: That the company "entered into a contract with said S. R. Heath, under and by virtue of which said labor was performed, and the following is a statement *of the terms,* time given, and condition *of said contract:* To work at general blacksmithing in and upon said premises for an indefinite time, *at the rate* of seventy-five ($75) dollars per month, payable on demand." In addition to the above, all the liens (except that of Heath) speak of "the contract *price.*" Independent of these latter words, however, we think it

is plain that the statement in the lien is that of a contract by which the rate of compensation is fixed. The statement in the complaint is of contracts by which the rate of compensation is not fixed. All the counts are similar in form. They allege in substance that the party performed labor upon the mine "to the extent *and of the value of*" so many dollars. If a promise had been alleged, it might have been argued that such allegation would cover the case either of an express or of an implied promise, and that the allegation as to value was surplusage. But no promise having been alleged, the only promise that can be inferred is the one implied by law to pay the reasonable value of the labor, which would leave the important question as to the amount unsettled. This is an essentially different contract from those set out in the notices of lien; and as we understand the law, the plaintiff can recover only upon the contracts stated in the notices of lien. We do not mean to say that a difference in the amounts stated and the amounts proved would be fatal; and it is possible that there may be other differences which would not be material. But we think that in all essentials the contracts must be the same.

Such difference was a ground of demurrer for ambiguity. (*Frazer* v. *Barlow*, 63 Cal. 71.) The demurrer specified the ambiguity, and should have been sustained. In addition to this, the notices of lien, when offered in evidence, were objected to on the ground of a variance; and it was error to overrule said objections.

The foregoing is sufficient to dispose of the appeal; but inasmuch as certain questions, which will arise upon a retrial, have been argued, we proceed to consider them.

2. It is contended for appellants that there was a misjoinder of causes of action. The facts are, that the company owned about five hundred acres of placer-mining ground, which (according to the map at page 380 of the

transcript) consisted of four claims, designated respectively as A, B, C, and D. Claim C, which comprised 118 acres, appears to have been made up of smaller claims, among which is the John Mains claim of about forty acres. Upon this forty-acre claim was a saw-mill, which was moved from its former position on claim A. The claims were all adjoining each other; and the whole five hundred acres was in the form of a strip along Hurdy Gurdy Creek, which strip was bounded on one side by the creek, on the other side by the Big Flat ditch, which was used to supply water to the claims, on the north by McGrew Gulch and on the south by French Gulch. The whole appears to have been used and operated as one mine. Twenty-three of the liens are upon the John Mains claim of forty acres, and upon the ditch. These notices mentioned the saw-mill and the connecting pipes, flumes, etc., and also some "giants." The remaining three liens are upon the whole five hundred acres, with the ditch and improvements.

The position is, in the first place, that the cause of action as to the John Mains claim should not have been joined with the cause of action as to the whole five hundred acres, and that said five hundred acres consisted of at least four separate claims, which should not have been joined with each other or with the ditch; and in the second place, that there is stated a cause of action as to certain machinery, "giants," pipe, etc., which, if "lienable" at all, ought not to have been joined with the claims.

We do not think there was a misjoinder. Section 1195 of the Code of Civil Procedure provides that "any number of persons claiming liens may join in the same action." This provision, it will be observed, does not say whether the lien must be all upon the same property or simply against the same person. We incline to the former construction. But we think that since the several claims all adjoin each other, with the ditch as a

backbone, and are all owned by the same owner, and were used and operated as one mine, they may be considered as one piece of property for the purpose of the present question. We do not understand that the five hundred acres consisted of land which was not subject to appropriation for mining purposes, as appears to have been the case in *Williams* v. *S. C. Mining Ass'n*, 66 Cal. 198. As we gather from the record, the five hundred acres consisted of *placer-mining* ground. And a party is not restricted in the quantity which he may acquire by purchase, but may purchase as many adjoining claims as he can, and have them included in one patent. (*Smelting Co.* v. *Kemp*, 104 U. S. 636.) We do not say that the unity of the property follows from the unity of ownership alone, but from that and the other circumstances mentioned.

Taking the several claims to constitute one piece of property for the purposes of the mechanic's lien law, we think there was no misjoinder of causes of action. All the liens were upon the John Mains claim, and the ditch and improvements, and the fact that three of them included something further is not material. The court can adjust the rights of the parties by its decree. (See, generally, *People* v. *Hager*, 52 Cal. 171; *Brady* v. *Kelly*, 52 Cal. 371.)

With reference to the iron pipe, giants, etc., we think they must be regarded as part of the mine, whether they were attached to it or not; for the Civil Code provides that all "machinery or tools used in working or developing a mine *are to be deemed affixed to the mine.*" (Civ. Code, sec. 661.)

The complaint is not very satisfactory in some of the above respects; but as the case must be reversed for the matter first mentioned, it can be amended so as to conform to the principles above stated.

3. It is contended for the appellants that the statement in the notices of lien as to the name of the person

by whom the claimant was employed is not sufficient. All the notices state in substance that the claimants were employed by the Big Flat Gravel Mining Company. The argument is, that this is the statement of a conclusion of law, and the code requires the notice of lien to state who, *in fact*, employed the claimant. The case of *McDonald* v. *Backus*, 45 Cal. 262, contains the statement (the other cases cited are not, in our judgment, in point) that the notice of lien is required to state facts, and not mere conclusions of law. This was said to show that a notice of lien was sufficient if it gave the name of one member of the firm by which the claimant was employed, omitting the other members, and not giving the firm name. Possibly that case was correctly decided. We express no opinion as to it. But we do not think that the broad statement as to conclusions of law can be maintained. According to it, if the owner sends his office-boy to order repairs upon a·building, and the boy simply tells the laborer to make the repairs, without saying for whom, the notice of lien must give the name of the office-boy as that of the person by whom he was employed. And the result would be similar if the person who sent for the laborer was himself a contractor. What good would it do for the claimant to put in his notice the name of the contractor's office-boy, or that of any chance messenger,—say an American district telegraph boy,—as that of the person by whom he was employed? The word "employed" is not appropriate in such a connection. Nor is there anything in the nature of the case which would give such a meaning to the word. In our opinion, the intention was that the claimant should put enough in his notice of lien to enable the owner to understand whether the claimant was an original or a sub contractor; in other words, whether the claimant asserted that he contracted with the owner and had a personal claim against him, or whether he contracted with the contractor, and looked only to him and the property.

The rights and duties of the two classes of claimants are materially different in several respects, and it is important for the owner to know which attitude the claimant assumes. But we should prefer not to lay down any rule about facts and conclusions of law. And in this connection we may say, as was said in *Wood* v. *Wrede*, 46 Cal. 637, that "we are certainly not disposed to defeat a lien by a nice criticism of the language in which the claim is set forth."

4. It is urged that several of the claims are not "lienable."

The lien of Heath shows that he was a blacksmith. He worked in the blacksmith-shop, which was upon the property, sharpened picks and drills, made pipe, and did other necessary work. It is said that this was not labor upon the mining claim. But, as we have shown, the tools and machinery used in working and developing a mine are "deemed affixed to the mine." (Civ. Code, sec. 661.) Hence it would seem to follow that work upon the tools and machinery, *while they are so used*, is work upon the mine. This applies to several liens.

The notice of lien filed by Ah Jake states that "the said Big Flat Gravel Mining Company was *to pay to the said Ah Jake* the sum of fifty dollars per month for his individual labor and services, and also the further sum of one dollar per day for the labor of one certain class which he might furnish, and the sum of one dollar and twenty-five cents per day for the labor of another certain class." It is said that Ah Jake could not have a lien for the labor which he furnished in accordance with the above; that the laborers so furnished should have filed liens themselves; and that there could not be two liens for the same labor.

It will be observed that the contract stated in the notice of lien is, that the sums to be paid for laborers furnished by Ah Jake are to be paid *to him*. He was the original contractor, and the laborers were the subcon-

tractors. And we think he was as much entitled to a lien as any other original contractor. The maxim, *Qui facit per alium facit per se*, applies. It is no objection that the subcontractors could also file liens. That is the case wherever a subcontractor files a lien. The court below adjusts its decree so that the owner does not have to pay twice. If the transaction stated in the notice of lien had shown that Ah Jake simply acted the part of an employment office, and that the company was liable directly to the laborers, he would not have been entitled to a lien for their labor.

There are some small matters shown by the evidence which are not "lienable," as, for example, the deer and bear meat supplied by Morris. This should be deducted from the amount due him; but we do not think it vitiates his lien for what was due. We do not deem it incumbent upon us to go through the mass of small details collected by counsel for appellants. It is sufficient to say that the character of the work should not be scrutinized too strictly. If the labor had a legitimate connection with the working of the mine, it is sufficient within the meaning of the lien law.

5. It is contended that where the laborers worked by the month, the notice of lien should be filed within thirty days from the end of each month. This assumes that each month is separate and distinct from every other month, and requires a separate notice of lien. But we do not think that this can be implied from the words "within thirty days . . . . after the performance of any labor in a mining claim." Upon the same reasoning, we should have to say that persons who worked by the day should file a separate notice for each day's work.

The other points do not require special notice. We therefore advise that the judgment be reversed, and the cause remanded, with directions to sustain the demurrer, with leave to amend.

Foote, C., concurred.

Belcher, C. C., took no part in this opinion.

The Court.—For the reasons given in the foregoing opinion, the judgment is reversed, and cause remanded, with directions to the court below to sustain the demurrer, with leave to amend.