[L. A. No. 1213.  Department One.—October 7, 1903.]

## AH LOUIS, Respondent; GEUNG HONG, Respondent, v. JAMES H. HARWOOD, STILLMAN C. WHITE and MYRA H. WHITE, Appellants.

MECHANICS' LIENS—LABOR IN TUNNEL—GENERAL EMPLOYMENT.—Laborers who have actually performed work in the construction of a tunnel are entitled to a lien thereupon for the value of the labor so performed, notwithstanding their original employment was general, and not for that particular work.

ID.—NOTICE OF LIEN—CHANGE OF OWNERSHIP—STATEMENT IN NOTICE—SEPARATE NOTICE NOT REQUIRED.—A notice of lien is sufficient if it states only who was owner when the lien was filed; but where there was a change of ownership during the work the statement is not rendered insufficient because it stated the name of all who were owners and reputed owners during all of the times stated in the notice, and did not state at what time the title passed from one owner to another. A separate notice of lien was not required because of the change of ownership, nor because of mortgages executed by the new owner to the former owners.

ID.—FORECLOSURE—PRIORITY OF LIENS—PARTIES—RIGHTS OF MORTGAGEES.—The claim of a laborer's lien is preferred to that of a mortgage lien which attached subsequent to the time when the work was done; and when the mortgagees were made parties defendant to the foreclosure of the lien they had the opportunity to present any interests acquired by them, and to have whatever protection the law gives them.

ID.—EMPLOYMENT BY THE MONTH.—The method by which the compensation for the labor performed is measured is immaterial where the labor is continuous; and the fact that the laborers were employed by the month did not make it necessary to file the notice within thirty days from the end of each month, so long as the employment in the tunnel does not actually terminate.

ID.—OPTION TO PURCHASE—CONTRACT AGAINST LIENS—ABSENCE OF NOTICE—LIABILITY OF OWNER.—The fact that the work of developing water by means of the tunnel on which the liens were claimed was begun by the contractor under an option to purchase, which stipulated that the owner and the land should not be liable for material purchased or labor performed under the contract, does not operate to relieve the owner from liens filed upon the tunnel and land convenient for its use and occupation for labor performed subsequent to the expiration of the option, in the absence of the statutory notice, or of any notice equivalent thereto, from the owners to the laborers limiting the liability of the owners for liens for such labor.

ID.—ATTORNEYS' FEES UPON FORECLOSURE—PLEADING—FINDING.—In order to warrant the allowance of attorneys' fees upon the foreclosure of liens under the Mechanic's Lien Law, no allegation or finding in relation thereto is necessary; and the sufficiency of an allegation or finding in relation thereto will not be reviewed upon appeal.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Frank F. Oster, Judge.

The facts are stated in the opinion.

M. K. Young, for Appellants.

The contract between the owner and the contractor was sufficient to protect the owner from liens. (*Schroeder* v. *Galland,* 134 Pa. St. 277;[1] *Commonwealth Title Ins. and Trust Co.* v. *Ellis,* 192 Pa. St. 321;[2] *Mammoth Min. Co.* v. *Salt Lake Min. Co.,* 151 U. S. 449, 452.) The laborers were not employed for the work and could not claim a lien. (*Roebling's Sons Co.* v. *Bear Valley etc. Co.,* 99 Cal. 488.)

Hight & Swing, for Respondents.

The laborers were entitled to a lien for the value of the labor performed upon the tunnel, regardless of their original employment. (Code Civ. Proc., sec. 1183; *Patent Brick Co.* v. *Moore,* 75 Cal. 205, 210.) The notice of lien was sufficient. (*Kelly* v. *Lemberger,* 46 Pac. (Cal.) 8; *Corbett* v. *Chambers,* 109 Cal. 179; *McGinty* v. *Morgan,* 122 Cal. 103; *Malone* v. *Big Flat Gravel Co.,* 76 Cal. 578; *Hagman* v. *Williams,* 88 Cal. 151; *West Coast Lumber etc. Co.* v. *Newkirk,* 80 Cal. 275.) No notice having been given as required by law, the owner is responsible. (*Fuquay* v. *Stickney,* 41 Cal. 583; *Evans* v. *Judson,* 120 Cal. 282; *Hines* v. *Miller,* 122 Cal. 517; *Rosina* v. *Trowbridge,* 20 Nev. 105.) Nothing contained in the option could· prevent the liens from attaching. (Code Civ. Proc., sec. 1201; James on Mechanics' Liens, secs. 180-182.)

CHIPMAN, C.—This is an action to enforce certain laborers' liens for work done upon a tunnel for the purpose of developing water. The court made an order consolidating

---

[1] 19 Am. St. Rep. 691.        [2] 73 Am. St. Rep. 816.

the two cases, and judgment passed for plaintiffs. Defendants moved for a new trial, which was denied, and they appeal from the judgment and from the order.

It appears that on May 3, 1900, defendants the Whites were the owners of the premises sought to be charged with the liens, and on that day executed an option to purchase the said land, together with certain other land, to defendant Harwood. This option was for sixty days,—to wit, until July 3, 1900. There was appended to it a blank for an extension, but it was never filed, and the option made no provision for its extension. On June 7, 1900, the Whites executed a deed of the land in question and some other lands to defendant Harwood, which was deposited in escrow, and to be delivered only upon certain written conditions which accompanied the escrow as part thereof. On October 10, 1900, this escrow deed was recalled and canceled by agreement, and the Whites conveyed the premises to Harwood, the latter executing to the former his note and mortgage as security for the purchase price. Harwood entered into possession of the land and went to work to develop water, under the option while it existed, and later under the escrow deed, and the subsequent arrangement. It was provided in the option that he should "work all the men practicable for water development," and "certainly work himself and two men." It was also provided "that the undersigned [the Whites] shall in no manner be held responsible or liable, nor shall any portion of said premises be held liable for any material furnished or labor performed, or caused to be furnished or performed by said J. H. Harwood in his efforts to develop water upon said premises." Plaintiff Ah Louis was employed by Harwood on July 9th, and plaintiff Geung Hong on August 15, 1900, to work for the compensation of forty dollars per month each, from which dates until October 19th following the lien is claimed. All the land in question was admitted to be convenient and necessary for the use and occupation of the tunnel.

1. It is claimed that the evidence does not justify the enforcement of a lien for the reason that the evidence does not show either one of the claimants to have been employed directly to labor upon the tunnel in question. The point urged

is thus stated: "A laborer in the course of a general employ-
ment who may happen to work upon a structure or excavation
which ordinarily would be subject to lien, had he been em-
ployed directly for such purpose, will not be entitled to a
lien unless he does labor in pursuance of such direct employ-
ment." This position is taken in analogy to the rule laid
down as to furnishing material for the structure, in *Roebling's
Sons Co.* v. *Bear Valley etc. Co.,* 99 Cal. 488. It was there
held that "the materials must not only have been used in
the construction of the building, but they must have been,
by the express terms of the contract, furnished for the par-
ticular building on which the lien is claimed." The language
of the statute is: "Mechanics . . . and laborers of every class,
performing labor upon or furnishing materials to be used in
the construction . . . of any building . . . shall have a lien
upon the property upon which they have bestowed labor or
furnished materials," etc. It appears that Harwood em-
ployed plaintiffs at a stipulated monthly compensation, and
it also appears that they performed labor for the periods
claimed in running the tunnel, but it does not appear that
they were employed for that particular work originally, al-
though it does not appear that they were employed for
other work or worked elsewhere than in the tunnel. If
when first hired plaintiffs were otherwise employed, but
on July 9th they were set to work on the tunnel, and
so continued until discharged, they certainly performed
labor upon the tunnel. If it be true that at some time prior
to July 9th, plaintiffs were engaged in some other employ-
ment,—in a hay-field, for example,—this fact would not make
it any the less true that when they performed labor on the
tunnel the law would give them a lien. The statute does not
say that the laborer must have been hired originally to do the
particular work for which a lien is given, and that he must
under that hiring have performed such work; it says he shall
have the lien if he performs the work. In the case of mate-
rials, the statute requires that they be furnished to be used in
the building or structure, and not sold to another, in general
terms, to be used for some unknown purpose. The material-
man cannot follow his material and fix a lien for its contract
price on the premises wherever it may happen to be used.

It must be intended for a particular use, and must be so used by the person to whom it is sold or under his direction. (*Roebling's Sons Co.* v. *Bear Valley etc. Co.,* 99 Cal. 488.) Of course, the laborer must do the work for which he claims the lien on the property sought to be charged therewith, and when he does this he has complied with the law—he has performed labor upon the particular premises.

2. It is contended that the notices of lien are insufficient, for the reason,—1. That two notices of lien are set forth in each notice; 2. That the names of the owners of the property are not stated as required by law; and 3. That plaintiffs were employed by the month. It is claimed that there should have been a separate lien filed against the Whites under section 1192 of the Code of Civil Procedure for the claim accruing prior to October 10th, when they conveyed absolutely to Harwood, and another lien against Harwood, as owner, under section 1183 of the Code of Civil Procedure. The notice of lien stated "that all the times herein mentioned, Stillman C. White, Myra H. White, and James H. Harwood were and now are the names of the owners, and reputed owners of said premises, and said James H. Harwood caused said tunnel to be . . . constructed," etc. It was held in *Corbett* v. *Chambers,* 109 Cal. 178, that the notice should state the name of the person who was the owner at the time the lien was filed, and need not state the name of the owner who was such at the time the claimant was employed. In the present case the notice stated the names of the owners at the time the claimant was employed, and also the name of the owner when the lien was filed. The fact that the notice did not state at what time during the course of claimant's employment title passed from one to the other did not affect the validity of the notice. The notice would have been sufficient if the name of Harwood alone had been given, as he was the owner when the lien was filed. If in good faith the claimant states the name of a reputed owner, "he shall not lose his lien if he shall afterward ascertain that some other person was the owner." (*Corbett* v. *Chambers,* 109 Cal. 178.) It was also there said: "The object of this statement in his claim is, as we have seen, to designate the person against whom he seeks to establish the lien, as well as to protect others in their dealing with the

property.  The purpose of this designation is to point out the individual who is to be affected thereby rather than the attribute of ownership."  The Whites were made parties defendant, and if they had interests as mortgagees which were imperiled, they had the opportunity to present them and have whatever protection the law gives.  Section 1186 of the Code of Civil Procedure makes the claim a lien preferred to a mortgage lien which has attached "subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished."  It is claimed that as to the lien for work done it is not preferred to the mortgage lien for the work done after the execution of the mortgage.  Even if this be so, it would not follow that the laborer must file two separate notices of lien.  It was held in *Corbett* v. *Chambers, supra,* that the claim of lien, which is to be filed, is not the enforcement of the lien, or any step for its enforcement, but is merely one of the acts to be performed in perfecting the lien and that it is not essential that this notice shall contain a statement of all the facts essential to establishing the lien, or anything more than is required by the statute.  We think the statute was complied with so far as the notice is concerned, and it was not necessary to file a separate notice of lien in order to bring the Whites in as parties defendant and have the priority of plaintiffs' liens determined.  We can see no reason why the compensation to be paid the laborer may not be contracted for by the month as well as by the day, and when by the month it has been held that it was not necessary to file the notice of the lien within thirty days from the end of each month, and, inferentially at least, the point now raised was held adversely to appellants' contention.  (*Malone* v. *Big Flat Gravel M. Co.,* 76 Cal. 578.)  The statute gives the lien for the work done.  The method by which the compensation to be paid is measured is immaterial.  It may be by fixing an amount per day, week, or month, and if continuous, as it was in this case, the contract would govern.  The employment does not terminate at the end of each month. (*Malone* v. *Big Flat Gravel M. Co.,* 76 Cal. 578.)  It could not continue longer than the work on the building or other structure continued, and there is no reason why it should not be treated like any other lien

for labor or material. We cannot discover that this would violate article XIV of the federal constitution.

3. It is further contended that the land is not subject to lien because of the contract or option under which Harwood went into possession. This contention is based on the provision of the option that the Whites were not to be held liable, nor was the land for any material furnished or labor performed, and because of the further provision that Harwood was to furnish at his own cost all material and labor. Cases are cited in other jurisdictions which, it is claimed, sustain this proposition. Such is not the law in this state. The owner of land cannot protect it from the statutory liens, except he give the statutory notice or some notice equivalent thereto. An agreement with a lessee or conditional purchaser that improvements must be at his cost, and that the lessor or seller will not be liable for labor or materials, will not alone satisfy the statute or protect the land from the lien. The Whites knew of the proposed work, for the option expressly provided that the purpose was to enable Harwood to develop water on the land. (*Hines* v. *Miller,* 122 Cal. 517; *Whittier* v. *Wiebur,* 48 Cal. 175.) Appellants claim, however, that both plaintiffs had actual verbal notice of the option. Defendant White testified: That he never posted any notices upon the premises disclaiming responsibility for the work; "that prior to the commencement of said work he told plaintiff that Harwood held the property under the option and that by its terms it was provided that neither said land nor he was responsible for labor performed thereon." It does not appear when or where White so informed plaintiffs; it may have been, and presumably was, while the option was in force, but this option terminated before plaintiffs commenced work, and there is nothing to show that it was in force when plaintiffs began work. Harwood testified that *he* went to work under the option and worked under it "as long as it existed; and on the expiration of the option I continued to work under the escrow deed." This deed was made in June, and plaintiffs began work in July. It is not necessary to decide whether verbal notice of the terms of this option would be a compliance with the statute. The evidence is not sufficient to show notice of any kind.

4. The court found generally that all the allegations of the complaint are true, and all the denials of the answer untrue. It was alleged in each case as follows: "Plaintiff is informed, and thereon alleges, that seventy-five dollars is a reasonable attorney's fee for plaintiff's attorney in this case in said superior court, and plaintiff has incurred the obligation to pay an attorney fee for plaintiff's attorney herein."

It is claimed that the finding is insufficient to support the judgment, because there being no direct allegation, it simply means that plaintiffs had the information. Section 1195 of the Code of Civil Procedure says that "The court must allow . . . reasonable attorneys' fees in the superior and supreme courts." No allegation as to attorneys' fees was necessary in the complaint and no finding was necessary. (*Clancy* v. *Plover*, 107 Cal. 272, and cases there cited.) No claim is made that the fee allowed is excessive.

It is advised that the judgment and order be affirmed.

Gray, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.