[L. A. No. 2886.    Department One.—May 24, 1912.]

## PACIFIC SASH & DOOR COMPANY et al., Respondents, v. A. W. BUMILLER et al., Appellants.

MECHANICS' LIEN—ALTERATION OF BUILDING—REMOVAL PRIOR TO FILING LIEN—RESTORATION OF BUILDING TO ORIGINAL STATE.—The removal of an alteration to a building after it is completed and used does not destroy the lien which the statute gives to persons furnishing materials or labor for such alteration, even if such removal is made before the filing of the lien. If the materials are actually used in and the work is actually done upon the alteration, and the change made is of such a character that it comes within the terms of the statute giving a lien for alterations upon a building, and it is completed and put to use as altered, the lien cannot be defeated by the subsequent removal of that portion of the building comprising the alterations and the restoration of the building to its original state.

ID.—LEASE PROVIDING FOR NON-LIABILITY OF LANDLORD FOR ALTERATIONS—NOTICE BY OWNER OF NON-LIABILITY.—A provision in a lease between the owners of a building and their lessee, that the owners should not be liable or responsible for any alterations or repairs made in the building by the lessee, and that no alterations should be made without the written consent of the owners, does not exempt the interest of the owners in the property from liability for liens on account of an alteration in the building made by a sub-lessee of the lessee. The owner can only exempt his interest from liability for such alterations, after knowledge that the work of alteration has

begun, by posting the notice of non-liability, as provided in section 1192 of the Code of Civil Procedure.

ID.—ALTERATION OF BUILDING INTO THEATER—MATERIALS FORMING PART OF STRUCTURE.—In an alteration of a part of a building so as to adapt it for use as a theater, lard-oil applied to the threads of joints of pipe used in the structure, insulated or covered electric wire used for drop lights attached thereto, paste for soldering joints, and asbestos comprising a part of the electric switch-board, all constitute parts of the structure, and a lien may be asserted therefor.

ID.—MATERIAL USED IN CONSTRUCTION.—Soapstone used on the inside of pipes as a lubricant to facilitate the pulling of wires through the pipes, is material used in the construction of such alteration, for which a lien may be claimed.

ID.—TIME FOR COMMENCEMENT OF ACTION TO ENFORCE LIEN.—An action begun on June 5th, to foreclose a lien filed on March 7th, of the same year, is within the period of ninety days' limitation of section 1190 of the Code of Civil Procedure.

ID.—ALTERATIONS BECOME MATERIAL PART OF BUILDING. — Alterations made in a building so as to adapt a portion thereof to the uses of a theater become a material part of the building, for which a lien may be claimed.

APPEAL from an order of the Superior Court of Los Angeles County refusing a new trial.   Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

O'Melveny, Stevens & Millikin, for Appellants.

Wesley H. Beach, Andrew J. Copp, Jr., Sheldon Borden, George H. Moore, and Mott & Dillon, for Respondents.

SHAW, J.—This is an appeal from an order denying the defendants' motion for a new trial. The record shows that four separate actions to enforce laborers and materialmen's liens upon a building were consolidated and tried together, as provided in section 1195 of the Code of Civil Procedure. The respective plaintiffs were Pacific Sash & Door Company, Woodill-Hulse Electric Company, Union Iron Works of Los Angeles, and E. J. Johnston. The liens were asserted against the property in Los Angeles known as the Bumiller Building, owned by A. W. Bumiller, Edna B. Sullivan, and Stella B. Burks. The materials and labor were furnished and performed at the instance of one Floyd Thompson, who at the

time occupied the basement and first three floors of the building under a sub-lease from a lessee of the owners. The materials and labor were furnished and performed in the making of certain alterations in the building so as to adapt the same for use as a theatre. It consisted in putting in a balcony, the front part of which was supported by an iron beam extending across the room and fixed in the walls, and the erection of a stage with the necessary fixtures and adjuncts therefor, and other structures not necessary to mention. Prior to the alterations, the first floor, in which the principal part of the alterations was made, was an open storeroom without partitions or interior walls, and with the usual columns and girders to support the building. The owners were aware of the making of the alterations and of the use of the materials and labor therein. They posted no notice disclaiming responsibility, as it is provided in section 1192 of the Code of Civil Procedure that they could have done if they had wished their interest in the building to be exempted from any lien therefor.

1. The defendants offered to prove that after the alterations had been made the structures composing them were all removed from the building prior to the filing of any liens against it. The court ruled, refusing to allow this evidence. This is assigned as error. The same witness, however, afterwards testified to the actual date of such removal, showing that it was after the liens were filed. The evidence further shows that the building as altered was used as a theatre for a considerable time after the alterations were completed. If the ruling upon the question as to the date of removal was error, it is cured by this testimony. However, we know of no statute or decision declaring that the removal of an alteration to a building after it is completed and used, destroys the lien which the statute gives to persons furnishing materials or labor for such alteration, even if such removal is made before the filing of the lien. If the materials are actually used in and the work is actually done upon the alteration, and the change made is of such a character that it comes within the terms of the statute giving a lien for alterations upon a building, and it is completed and put to use as altered, we are of the opinion that the lien cannot be defeated by a subsequent removal of that portion of the building comprising the alterations and the restoration of the building to its original state.

2. The lease between the owners and the original lessee provided that the owners should not be liable or responsible for any alteration or repair made in the building by the lessees, and that no alteration should be made without the written consent of the owners. Defendants claim that this exempts their interest in the property from liability for the liens. We do not so understand the law. Section 1192 of the Code of Civil Procedure provides a mode by which the owner may exempt his interest from liability for any alterations made by his lessee or any other person without his consent. This provision is for the benefit of the owner and he must avail himself of it, or otherwise, according to its terms, his interest will be liable for the lien. No exception is made in favor of owners who have contracts that the lessee shall be responsible for alterations made and that the owner shall not be responsible therefor. Such contracts are good as between the owner and the lessee and serve to fix the liability as between them, but they do not affect the rights of lien claimants. (*Ah Louis* v. *Harwood*, 140 Cal. 506, [74 Pac. 41]; *Hines* v. *Miller*, 122 Cal. 521, [55 Pac. 401].) If the owner neglects to post a notice, after knowledge that the work of alteration has begun, as provided in section 1192, he is deemed to consent to such alterations.

3. The claim that some of the materials for which liens were allowed did not enter into or become a part of the structure is not sustained by the facts. Lard-oil applied to the threads of joints of pipe used in the structure, insulated or covered electric wire used for drop lights attached thereto, paste for soldering joints, asbestos comprising a part of the electric switch-board, all constitute parts of the structure and a lien may be asserted therefor. Some soapstone was used on the inside of pipes, as a lubricant, to facilitate the pulling of wires through the pipes. This, being a part of the work of construction, we think it may also be considered as a part of the material used in construction, for which a lien may be claimed.

4. The complaints in some of the actions were filed on the ninetieth day after the filing of the claims of lien. For example, Johnston's claim of lien was filed on March 7, 1908, and his action was begun on June 5, 1908. This was within the time fixed by the Code. (Code Civ. Proc., secs. 1190 and 12; *White* v. *Soto*, 82 Cal. 658, [23 Pac. 210].)

5. The evidence does not support the claim of the defendants that the alterations made were not a part of the building in question. The description we have already given of the character of the alterations made sufficiently shows that they became a material part of the building. It is true, they were afterwards removed and the building restored to its original condition. But it was no part of the contract with the lessee or sub-lessee that they should be removed, and in any event, they were so attached to the building as to become not only fixtures but a part of the structure of the building itself.

No other points are of sufficient importance to require notice. The order denying a new trial is affirmed.

Angellotti, J., and Sloss, J., concurred.