## M. K. & T. RAILWAY CO. v. A. J. BAKER.

LABORERS ON RAILROADS; *Time-Keeper; Superintendent; Act of* 1872, *construed.* One who is in the employ of a contractor with a railroad company simply as time-keeper and superintendent, is not a laborer in the sense in which that term is used in chapter 136 of the Laws of 1872, and cannot recover of the railroad company the amount due him therefor by the contractor, notwithstanding the company failed to take the bond required by that statute.

*Error from Labette District Court.*

*Baker* sued the *Railway Company* before a justice of the peace to recover a balance of $104.13 due him "for labor as time-keeper on work of grading in the city of Parsons" on defendant's railroad. The bill of particulars, except as to the nature of plaintiff's claim, is very like that in *Brown's case*, ante, p. 558. The case was removed to the district court, and there tried at the March Term.1874. Finding and judgment in favor of the plaintiff, and the *Railway Company* brings the case here on error.

*David Kelso*, for plaintiff in error:

Baker represents that defendant entered into a contract with one McLeod to construct a part of its road, and that plaintiff served said McLeod in the capacity of "time-keeper," and occasionally as "superintendent" of the work, and that McLeod failed to pay him for such service the whole amount due him. He seeks to make the Railroad Company liable under the statute of 1872. The statute in question is entitled "An act to protect laborers, mechanics and others in the construction of railroads," and provides *inter alia* that in case the railroad company shall fail to take the bond required by that act, it shall be liable to the persons mentioned, viz., *laborers, mechanics and material-men,* to the extent of the indebtedness due them or either of them from the contractor. It is nowhere alleged in the plaintiff's petition that he served the contractor McLeod either as *laborer, mechanic, or material-man.* The terms "laborer" and "mechanic" are not to be taken in their generic sense. The service of the physician who healed the wounds and cured the malady of the contractor, or the service of the attorney who drafted the contract between the employes and the contractor, or the service of the clerk who kept the time the employes worked, is not that class of work which the legislature intended should be paid for, within the meaning of the statute. Words are to be construed as the legislature intended to use

them, which intent is to be gathered from the context. 7 Kas., 35; 14 Md., 184; 35 Miss., (6 George,) 17. In § 6, ch. 38, Gen. Stat., it is evident that the legislature did not intend that the services of a clerk and a laborer or a mechanic were synonymous; and we think it is equally certain that the legislature, by the passage of ch. 136 of laws of 1872, did not intend to protect the service of a clerk, or time-keeper. The act itself is *strictissimi juris*, and its terms should not be enlarged so as to defeat the ends of justice and require the corporation to pay their debts a second time, simply because it is a railroad corporation.

*Davis & Talbot*, for defendant in error:

Baker's services were rendered as "time-keeper." He was on the ground all the time, and had charge of the men. The statute does not in express terms name a time-keeper, or superintendent of work, but it was surely the intention of the legislature to protect all persons who contributed to the construction of the road. The statute is remedial, and should be liberally construed. The word "laborer" should not be construed in the strict sense claimed by plaintiff in error. That might be correct in the light of the decisions of some of the states in construing the term "laborer" in certain statutes, where the courts have held that the object of the statute under consideration was the relief of "a class who usually labor for small compensation, to whom the moderate pittance of their wages is an object of interest and necessity, and who are poorly qualified to take care of their own concerns, or look sharply after their employers." *Coffin v. Reynolds*, 37 N. Y., 642. On the contrary, it is evident from the express language of the statute, under which this suit is brought, that the object is not the protection of such alone as perform toilsome manual labor—for the merchant, though he be a millionaire, is protected, as is also the sub-contractor. There would be no great violence done to the English language if the court should say that the services of Baker were done as "laborer;" nor can it be said that keeping the time

of the hands, and superintending the work, was not a "part of the work given" by the company to McLeod. The statute should not be so construed as to require defendant below to pay its debts a second time simply because it is a railroad corporation, but it should be so construed as to protect the citizens against the gross negligence of defendant below, in failing to take a bond as required by law.

The opinion of the court was delivered by

BREWER, J.: This case resembles in many respects the one of the same plaintiff in error against M. G. Brown, just decided; (*ante*, p. 557.) The contractor, and the work contracted for, were the same. There is however one material difference between the two cases, a difference which is fatal to the claim of the defendant in error. The debts for which Brown's action was brought were debts to laborers. Baker sues for services rendered the contractor as "time-keeper," and "superintendent." Is such a debt one within the scope of the act? We think not. The act provides that the railroad company shall take from the contractor a "bond, conditioned that such person shall pay all laborers, mechanics, and material-men, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons," etc., and in case of a failure to take such bond that the company "shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor." (Laws of 1872, p. 286, §1.) This act does not provide that the company shall be responsible for *all debts* contracted by the contractor, but only those to certain classes of persons. Now the only class in which Baker can by any sort of construction be placed, is described by the term "laborers." Doubtless this term is often used in an enlarged sense, as embracing all persons who perform any kind of labor, physical or mental. In that sense any professional or literary man is a laborer; and in that sense Baker, as "time-keeper" and "superintendent," was a laborer. But it is very apparent that it is not used in any such sense here. If it

were, the succeeding term of description, "mechanics," would be superfluous, for a mechanic is in that sense unquestionably a laborer. Indeed, the terms of description associated with this clearly indicate its meaning. *Noscitur a sociis.* These show that it is here used in its more common acceptation, and in accordance with the definition given by Webster, as follows: *"Laborer.* One who labors in a toilsome occupation; a man who does work that requires little skill, as distinguished from an artisan; sometimes called a laboring man." We find the terms "laborer" and "mechanic" used elsewhere in the statute in conjunction, and with the same meaning. See the exemption act, Gen. Stat., p. 474, § 6, where it is provided that no personal property "shall be exempt from attachment or execution for the wages of any clerk, mechanic, laborer or servant." Counsel contends that this is a remedial statute, and should be liberally construed. But it is also a statute imposing an additional liability, and under which it is sought to make the company responsible for a debt it never contracted. Such a statute should never be extended beyond the fair import of its terms. If the legislature had intended to give all employes of a railroad contractor the benefit of its provisions, it could have expressed that intention in fewer words, and leaving no room for doubt. Designating classes, it intended that only those classes should be thus protected; and it could hardly have used terms more apt to exclude clerks, time-keepers, superintendents, and that kind of employes, than those actually used. *Ericcson v. Brown,* 38 Barb., 390; *Aikin v. Wasson,* 24 N. Y., 482. See upon this general question, *Coffin v. Reynolds,* 37 N. Y., 640.

We think therefore the railroad company was not liable for the demand sued on in this action, and the judgment must be reversed.

All the Justices concurring.