Argued November 1, decided November 15, 1909.

DURKHEIMER v, COPPEROPOLIS COPPER CO.

[104 ·Pac. 895.]

MINES AND MINERALS—WAGES—LIENS—PERSONS ENTITLED—CONSTRUCTION OF STATUTE—"PERSON WHO SHALL PERFORM LABOR."

1. Section 5668, B. & C. Comp. as amended by Laws 1907, p. 294, provides that "every person who shall perform labor" about a mine shall have a lien, etc. Section 5669 provides that "every laborer or materialman" claiming under the act shall take certain steps to perfect his lien. Held, that the phrase "every person who shall perform labor on any mine," etc., applies to ordinary laborers who perform actual, visible toil with their hands or muscles, other kinds of service not being expressly mentioned, and does not embrace superintendents or managers.

MINES AND MINERALS—LIENS—AMENDMENT OF STATUTE.

2. Section 5668, B. & C. Comp., containing a provision granting a lien to a person working in a boarding house in connection with a mine, was amended by Laws 1907, p. 294, which omitted that provision and repealed all acts and parts of acts in conflict with the provisions thereof, and the lien as to such laborer was destroyed.

CONSTITUTIONAL LAW—VESTED RIGHTS—LIENS—EFFECT OF REPEAL OF STATUTE.

3. A lien is a creation of statute, not a vested right, and the legislature by repealing a statute may take it away, provided it leaves the remedy at common law intact.

WITNESSES—CROSS-EXAMINATION—SCOPE.

4. Where questions asked by defendant on cross-examination were a part of its case in chief, plaintiff's objections thereto were properly sustained.

TRIAL—CONDITIONAL ADMISSION OF EVIDENCE—EXPENSE OF INTRODUCTION—OFFER TO PAY.

5. Where in an equity case, objection was sustained to questions asked on cross-examination as properly being part of the party's case in chief, that party's request to have the testimony taken notwithstanding the ruling was properly refused, where it did not offer to pay the expense thereof, provided the evidence should finally be held inadmissible.

From Grant: GEORGE E. DAVIS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is a suit by M. Durkheimer to foreclose certain laborers' liens upon mining property in Grant County. Plaintiff sued for himself and as assignee of certain claimants, whose lien claims had been transferred to him. There are five liens involved, and each is set out as a separate cause of suit. The first cause is upon a lien filed by plaintiff for provisions, hardware, and supplies furnished by him to the defendant company. The second cause is upon a lien filed by W. W. Gibbs for labor as superintendent and general manager of the Copperopolis mine. The third cause is upon a lien for work and labor performed by Mrs. I. B. Gibbs in cooking for the employers at the mine. The fourth cause is upon a lien for work and labor performed at the mine by W. O. Gibbs. The fifth cause is upon a lien for provisions furnished the mine by D. Walter Fisk. A demurrer was filed to each cause of suit, and sustained as to the second and third causes and overruled as to the others. Plaintiff declined to amend the complaint, and defendant amended as to the first, fourth, and fifth causes, and a trial was had resulting in a decree for plaintiff on each of them. Plaintiff appeals from the decree of the court sustaining a demurrer to the second and third causes, and defendants appeal from the decree in favor of plaintiff on the other counts. That portion of the notice of lien of W. W. Gibbs which is necessary to an understanding of the point raised by the demurrer reads as follows:

"Notice is hereby given that I, W. W. Gibbs, of Prairie City, Oregon, have performed labor and rendered services in Grant County, Oregon, for the Copperopolis Copper Company, a private corporation, organized under the laws of the State of Oregon, and engaged in the mining business near Prairie City, in Grant County, Oregon; that said services consisted in working as superintendent and general manager of the following

described mining property, situate near Prairie City in Grant County: [Here follows a description of the property.]   That the said Copperopolis Copper Company, a private corporation, was and is the owner and reputed owner of the above-described mining property upon which said labor and services was performed by this plaintiff."

The lien further shows that claimant was employed by the board of directors, of which he was one, at the agreed price of $300 per month, and that a balance is due him of $4,800, for which he claims a lien.   Other necessary facts appear in the opinion.        AFFIRMED.

For appellant there was a brief over the names of *Messrs. Cattanach & Wood.*

For respondents there was a brief over the names of *Mr. John L. Rand, Messrs. Leedy & Paterson, Messrs. Butler & Poland, Mr. Austin F. Flegel* and *Mr. William P. Muir,* with an oral argument by *Mr. A. D. Leedy.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The sufficiency of W. W. Gibbs' lien depends upon the construction of Section 5668, B. & C. Comp., as amended by the Session Laws 1907, p. 294.   So much of the amended section as is necessary to cite here reads as follows:

"Every person who shall perform labor upon  *  *  any mine, lode, mining claim  *  *   shall have a lien," etc. Section 5669, as amended, reads as follows:   "It shall be the duty of every laborer or materialman claiming the benefit of this act, within sixty days after he has ceased to labor thereon from any cause, or has ceased to furnish materials therefor, to file with the county clerk of the county," etc.   Laws 1907, p. 295.

If the superintendent and general manager of a mine is a "person performing labor upon a mine" within the meaning and intent of this statute, his lien is otherwise

unobjectionable, and the demurrer should have been overruled. The decisions of the courts are not harmonious, and slight differences in the wording of the statutes render many of them inapplicable. We are of the opinion that the words "every person who shall perform labor," used in the statute, are designed to designate ordinary laborers who perform actual physical toil, common laborers and those who are required to use their hands or muscles in actual work, and do not include that higher and usually better paid class of employees whose duties are confined to superintendence and management, unless such class is expressly mentioned in the statute. We think Section 5669 defines the preceding section when it provides that "every such laborer or materialman" shall take certain steps in order to perfect his lien. The intent of the statute is to protect a class of persons rarely able to protect themselves, and who, from the laborious nature of their occupations and the necessity of earning their daily bread by daily toil, have not time, opportunity, or intelligence sufficient to inform themselves as to the financial responsibility of the parties for whom they work. To say that a general superintendent and manager can have a lien for his services would be a construction that would do violence to both the language and intent of the statute, and permit those who by their situation would be able to know just the financial condition of a mine to use that information to gain an advantage over the poor fellow who was blistering his hands by actual contact with the pick and shovel. Few courts have gone to the extent of holding services purely as superintendent or manager to be lienable.

The case of *Willamette Falls Transportation & Milling Co.* v. *Remick,* 1 Or. 169, is cited by counsel for appellant Durkheimer, in support of this contention in the case at bar. The statute under which the claim of lien was made in that case provided that "all persons performing labor

for the construction of any building shall have a lien thereon." It is submitted that the term "for the construction" is far broader than the word "upon," which is used in the same connection in the case at bar. The question actually decided is stated in the syllabus, as follows:   "A mechanic, who acts as overseer while performing manual labor, is entitled to a lien for all his services." The court say:   "Remick certainly performed 'labor for the construction' of the company's buildings, and is clearly entitled to a lien for a part, if not the whole, of such labor; and, as his services were inseparably rendered and received by the company, we think he should have a lien for his entire compensation.   When time and skill are employed to supervise and direct in the construction of a building, a lien is as much deserved and required as in any other case, and beyond question it should be allowed, if actual labor is added to the other grounds of right. There is doubt as to whether an architect, or person performing labor of like nature, can hold a lien; but it is clear that, for work of any kind upon the building in its construction, the statute gives a remedy." It is evident that the actual physical labor performed by Remick was the sheet anchor that saved and preserved a lien. His labor was the principal element.   The fact that he also acted as overseer was merely incidental.   In *Cullins* v. *Flagstaff Silver Mining Co.*, 2 Utah, 219, affirmed by the United States Supreme Court, 104 U. S. 176 (26 L. Ed. 704), Cullins was a foreman, having charge of the miners in the actual work of the mine, with the power incidentally to hire and discharge hands and to purchase supplies.   He was not the general superintendent or manager of the mine, that position being filed by one J. N. Patrick. It also appeared that he incidentally performed some physical labor.   To use the language of Mr. Justice WOODS (104 U. S. 177: 26 L. Ed. 704) : "He was not the general agent of the mining business of the

plaintiff in error.  That office was filled by Patrick.  He was not a contractor.  His services were not of a professional character, such as those of a mining engineer.  He was the overseer and foreman of the body of miners who performer manual labor upon the mine.  He planned and personally superintended and directed the work. * * His duties were similar to those of the foreman of a gang of track hands upon a railroad, or a force of mechanics engaged in building a house."  It will be noticed that Cullins did not claim a lien as superintendent or manager, but as a laborer.  In the notice of lien in the case at bar, Gibbs claims as superintendent and general manager of the property.  The business of a superintendent is to superintend, to direct, and of a general manager, to generally manage, control, and supervise, a business.  The lien itself shows that Gibbs was a director of the company, and was employed by the board of directors, including himself, as superintendent and general manager, at a fixed salary of $300 per month.  If he is a laborer within the meaning of the law, there is no logical reason why the president, the secretary, and the board of directors of a mining corporation may not vote themselves salaries and become preferred creditors, to the injury of the actual toilers in the tunnels.  They might well say that they had expended mental effort and time to make the business a success; that they had written letters, traveled from their homes to the mine, attended directors' meetings, and gone through the accounts of the business; and that all this was labor on the mine, for which they ought to have a lien.  With all deference to some writers and some courts who contend that, under certain circumstances, a superintendent is entitled to a lien for his services, we decline to apply a rule whose logic is fraught with such dangerous results to a case like the one at bar. We hold that the words "labor upon a mine" mean actual physical labor, except where other kinds of service are

expressly mentioned in the statute, and that the notice lien must unequivocally show that the labor was actually performed upon the property. Perhaps a use of the words of the statute would be sufficient, but in the case at bar the language of the statute is qualified by a designation in the notice of lien of the services performed, which on their face are not lienable. In this conclusion we are supported by very strong authority.

In the case of *Smallhouse* v. *Kentucky & M. G. & S. M. Co.*, 2 Mont. 443, 445, the court say: "The purpose of the legislature in enacting this statute undoubtedly was to secure to the persons therein named compensation for their labor upon the erections therein contemplated, and within the scope of the statute. Its provisions should be liberally construed. It was designed for the protection of workmen who by their labor or materials furnished have called property into being or added to its value, to the end that the property itself should be held liable for the labor and materials that produced it. But it is not every one who contributes to the erection of a building or structure that is entitled to a lien thereon. If the contribution was indirect, as if A. should loan money to B. for the purpose of enabling him to erect a building, and he should with the money thus loaned employ workmen, purchase materials and construct a building, A. could not hold a mechanic's lien on the building for the money so loaned. In order to have the lien attach, the labor or materials must have been expended on the building itself, and not upon something else that produced it as a result. From the nature of plaintiff's employment, as averred by himself, it does not appear that he was an architect or laborer, or that he labored directly in the construction of the buildings, etc., but rather that he was employed by the corporation at a fixed salary to manage and superintend its affairs at the place named. Undoubtedly he had the general oversight of the business of the

company, of the workmen employed to labor upon the buildings, etc., and probably kept an account of their time, saw that they performed good service and earned their wages, and at stated times paid them their money, for all of which he rendered an account to the company. His services were useful and necessary, but they contributed only in an indirect manner to the construction and erection of the buildings. He stood very much in the situation of an owner directing and managing works of his own. He was the representative of the corporation, and to the laborers under him he was the corporation at the place where the labor was performed. This was not the kind of service that entitled one to a mechanic's lien. * * This superintendent stands in place of the corporation, and to give a lien for the kind of labor he performed might defeat the liens of the workmen and materialmen who actually constructed the building, and would be like giving a lien to the corporation itself." See also, *Gulf & B. V. Ry. Co.* v. *Berry,* 31 Tex. Civ. App. 408 (72 S. W. 1049) ; *Pennsylvania & Delaware Railroad Co.* v. *Leuffer,* 84 Pac. 168 (24 Am. Rep. 189) ; *State ex rel. Grocery Co.* v. *Judge,* 108 La. 512 (32 South. 433 : 58 L. R. A. 407 : 92 Am. St. Rep. 392) ; *Meands* v. *Park,* 95 Me. 527 (50 Atl. 706) ; *Boyle* v. *Mountain Key Min. Co.,* 9 N. M. 237 (50 Pac. 347) ; *M., K. & T. Ry. Co.* v. *Baker,* 14 Kan. 563 ; *Malcomson* v. *Wappoo Mills* (C. C.) 86 Fed. 192. We conclude, therefore, that the demurrer to the second cause of suit was properly sustained.

2. We think that the demurrer to the third cause of suit was properly sustained. Before the amendment of 1907, Section 5668, B. & C. Comp., contained a provision granting a lien to a person working in a boarding house used in connection with a mine, but the amendment of 1907 omitted this provision entirely, and repealed all acts and parts of acts in conflict with the provisions of said act. It is difficult to see why this was done as the labors

of a cook are certainly as meritorious as those of a teamster, or many other classes of laborers whose claims are protected by the amendment, but, the legislature having deliberately excepted cooks from the protection of the statute, we have no right to so construe it as to make it include a class which legislative wisdom or unwisdom has stricken from the list.

3. A lien is a creation of the statute and a repeal of the statute destroys the lien. It is not a vested right, but an additional remedy provided by law, and it is always within the power of the legislature to take away such remedy provided it leaves the remedy at common law intact: *Hanes* v. *Wadey*, 73 Mich. 178 (41 N. W. 222: 2 L. R. A. 498) and cases there cited.

4. We do not think the court erred in sustaining the objections of plaintiff to the questions asked by defendant on cross-examination. They were a part of defendant's case in chief, and the objections made were properly sustained.

5. Defendant's request to have the testimony taken, notwithstanding the ruling of the court, was properly refused, since he did not offer to pay for the taking of the testimony: *Sutherlin* v. *Bloomer*, 50 Or. 404 (93 Pac. 135.)

We find no error in the rulings of the court below, and its decree is therefore affirmed. As both parties have appealed and the decree of the lower court is undisturbed, neither party will recover costs in this court.

AFFIRMED.

---

Decided November 23, 1909.