WALTER M. FINEGAN, APPELLEE, V. ST. JOSEPH & GRAND
ISLAND RAILWAY COMPANY ET AL., APPELLANTS.

FILED JANUARY 2, 1915. No. 17,911.

1. **Railroads: CONSTRUCTION: CONTRACTOR'S BOND: LIABILITY TO SUB-
CONTRACTOR.** Where a railroad company takes a bond from a con-
tractor for the faithful performance of his contract for the con-
struction of a part of its line of road in the state of Kansas,
conditioned substantially as provided by section 7006 of the General
Statutes of that state, it will not be liable to a subcontractor for
the work of his teams and for profits claimed by him from such
contractor.

2. ———: ———: ———: **FAILURE TO FILE BOND: SUBCONTRACTOR:
RIGHT OF ACTION.** The fact that such bond was not filed with
the register of deeds of the county where the work was to be
performed will not entitle the subcontractor to maintain an action
therefor against such railroad company.

3. ———: ———: **ACTION: SERVICE ON CONTRACTOR: JURISDICTION.**
In such a case by the bringing of an action against the railroad
company in a county in this state where the subcontractor resides,
and serving a summons on the contractor in another county, no
jurisdiction is acquired to proceed against the contractor.

4. ———: ———: **ACTION BY CONTRACTOR: SUFFICIENCY OF EVIDENCE.**
Evidence examined, and found to be insufficient to sustain an
action in favor of the subcontractor and against the railroad
company.

APPEAL from the district court for Jefferson county:
LEANDER M. PEMBERTON, JUDGE. *Reversed.*

*Brown & Eastin, Lathrop, Morrow, Fox & Moore, O. W.
Pratt, E. A. Wunder* and *John C. Hartigan,* for appellants.

*F. N. Prout* and *Heasty & Barnes, contra.*

BARNES, J.

Walter M. Finegan commenced this action in the dis-
trict court for Jefferson county against Wood, Bancroft
& Doty, to recover a balance alleged to be due him as a sub-
contractor under them in the construction of certain im-

provements on the line of the St. Joseph & Grand Island Railway Company in Marshall county, Kansas. He joined the railroad company as a defendant, for the alleged reason that the company, in letting the contract to Wood, Bancroft & Doty, failed to take the bond provided for by section 7006 of the General Statutes of Kansas for 1909. Service was had upon the railway company in Jefferson county, and thereupon a summons was sent to other counties, and was served upon Wood, Bancroft & Doty, at their office in Douglas county, and on George F. Bancroft at his residence in Butler county, in this state. The contractors challenged the jurisdiction of the court by demurrer, by their answer, and by objections to the evidence, and in every way reserved the jurisdictional question. The defendant railway company demurred to the plaintiff's petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the company answered over, alleging that Wood, Bancroft & Doty actually gave the company the bond provided for by the section above named. The company also pleaded the Kansas statute and the interpretation thereof by the supreme court of that state. The trial court, on motion of the plaintiff, struck out of the answer of the defendant railway company all of the allegations beginning with the plea of the law of Kansas, and the interpretations thereof by the supreme court of that state, for the reason that all that portion of the answer contained no allegations of fact, but were the conclusions of law of the pleader, and were immaterial, irrelevant and redundant.

The case then went to trial. The plaintiff offered, and the court received, in evidence the bond given by Wood, Bancroft & Doty to the defendant railway company; but the testimony showed that the bond was not filed with the register of deeds of Marshall county, Kansas. The plaintiff also offered, and the court received, the General Statutes of Kansas for 1909, and particularly section 7006, which is the section pleaded by both the plaintiff and the defendant company. The defendant further proved and offered in evidence exhibit 3, which was the subcontract

between Finegan, the plaintiff, and Wood, Bancroft & Doty, and then proceeded to introduce testimony tending to show the work he did under that contract.

The testimony of Finegan, commencing at page 11 and extending to page 42 of the bill of exceptions, relates with much detail the various efforts Finegan made to comply with his contract with Wood, Bancroft & Doty. All of this testimony was objected to by the defendant railway company, on the ground that it was not competent, and did not bind it for any work that the plaintiff did himself; that he had no lien, and no right to charge the defendant company for any work performed by himself; that the defendant company was not bound by anything contained in the contract between Wood, Bancroft & Doty and the plaintiff; that plaintiff could not fix a liability upon the defendant for any money due to him as a subcontractor from Wood, Bancroft & Doty. These objections were made to the court, and appear continually throughout the examination of the plaintiff's witnesses, but were overruled. The plaintiff's entire testimony simply tended to show that there was a balance due to him from Wood, Bancroft & Doty on his subcontract; while the testimony of the defendants Wood, Bancroft & Doty tended to show that there was nothing due plaintiff.

The defendant railway company, at the close of the testimony, requested the following instruction: "Under the pleadings and the evidence in this case, the jury will return a verdict for the defendant, the St. Joseph & Grand Island Railway Company." This instruction was refused, the cause was submitted to the jury, and a verdict was returned for the plaintiff and against both of the defendants for $1,240. Timely motions for new trials were filed by each of the defendants. The motions were overruled, judgment was rendered on the verdict, and defendants have prosecuted separate appeals.

It is the contention of the defendant railway company that the court erred in overruling its demurrer to plaintiff's petition, and that as against it the evidence failed to establish a cause of action in plaintiff's favor. It must

be observed that the plaintiff sought to recover against the railway company for the sole reason, as alleged in, his petition, that it failed to take a bond from the contractors, Wood, Bancroft & Doty, as provided by section 7006 of the General Statutes of Kansas for 1909. That section reads as follows: "That whenever any railroad company shall contract with any person for the construction of its road or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics and materialmen, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons or to any person to whom any part of such work is given, incurred in carrying on such work, which bond shall be filed by such railroad company in the office of the register of deeds in each county where the work of such contractor shall be. And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor."

It appears from the testimony that the railway company did take a bond, conditioned for the faithful performance of the contract, from the contractors, which bond, together with a copy of the contract which was attached thereto, appears in the bill of exceptions. It was shown, however, that the bond was not filed with the register of deeds of Marshall county, Kansas, and it is contended by the plaintiff that this fixed the railroad company's liability in his favor. The question of the filing of the bond, however, was before the supreme court of Kansas in *Mann v. Burt*, 35 Kan. 10, and the court said: "On the part of the plaintiff, it is urged that before the railroad company will be exempt from liability for the debts of the contractor it must not only have taken a bond, but it must also have filed the same in the office of the register of deeds; while the claim of the company is that, to escape such liability, it was only required to take a good and sufficient bond; and this it alleges it had done. We agree with the de-

fendant. The statute is so written. Its terms are plain
and unmistakable. The language fixing the liability of
the railroad company is: 'And if any such railroad com-
pany shall fail to take such bond, such railroad company
shall be liable to the persons herein mentioned to the full
extent of all such debts so contracted by such contractor.'
*   *   * Thus it will be seen that the filing of the bond
is not a condition precedent to be performed by the rail-
road company before it can claim immunity from the pay-
ment of the debts mentioned in the statute. It is true that
in a preceding part of the statute it is made the duty
of the company to file the bond in a public office, and we
might agree with the plaintiff that it would add much to
the convenience of persons who desire to avail themselves
of the benefit of the bond, to have required it to be filed
before the company would be freed from liability; but when
the legislature came to fix the condition upon which the
liability of the company should arise, it provided that it
should be liable if it failed to *take* a bond, and not if it
failed to take and *file* the same; and the inconvenience
occasioned, or the impolicy of the statute, are not con-
siderations for the court."

It thus appears that the failure to file the bond created
no liability to the plaintiff on the part of the railway
company. It is contended by the railway company that
the bond which was actually taken is sufficient in form
and substance to comply with the statute, and we are in-
clined to the view that this contention is well founded.

It is further contended that the plaintiff, as a sub-
contractor under Wood, Bancroft & Doty, was not entitled
to maintain an action on the bond against the defendant
railway company. The statute of the state of Kansas, re-
quiring a contractor to furnish a bond, has been construed
many times by the supreme court of that state.

In *Wells & Co. v. Mehl*, 25 Kan. 205, the court said:
"This may be a remedial statute, as counsel urges; but
it is a statute imposing an additional liability, and under
which it is sought to hold a party liable for a debt he
never contracted. Such a statute should never be ex-

tended beyond the fair import of its terms." The statute in that case was held to be a *quasi* mechanics' lien law.

In *Missouri, K. & T. R. Co. v. Baker,* 14 Kan. 563, Judge Brewer, speaking for the court, said: "Baker sues for services rendered the contractor as 'time-keeper,' and 'superintendent.' Is such a debt one within the scope of the act? We think not. The act provides that the railroad company shall take from the contractor a 'bond, conditioned that such person shall pay all laborers, mechanics, and materialmen, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons,' etc., and, in case of failure to take such bond, that the company 'shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor.' * * * This act does not provide that the company shall be responsible for *all debts* contracted by the contractor, but only those to certain classes of persons. Now, the only class in which Baker can by any sort of construction be placed is described by the term 'laborers.'" The court then proceeded to hold that a time-keeper is not a laborer within the meaning of that term, and concluded as follows: "Counsel contends that this is a remedial statute, and should be liberally construed. But it is also a statute imposing an additional liability, and under which it is sought to make the company responsible for a debt it never contracted. Such a statute should never be extended beyond the fair import of its terms."

*St. Louis, K. & A. R. Co. v. Cobb,* 25 Kan. 388, was an action brought by persons who furnished a subcontractor with provisions and other goods for the subsistence of persons who worked in the construction of the railroad. In that case no bond was taken, and the court held that the question there presented had already been virtually answered in the negative, in the case of *Wells & Co. v. Mehl,* 25 Kan. 205. The court said: "The plaintiff in this case did not furnish anything to be *incorporated into the construction of the railroad itself,* which alone would place him in the first class; and he did not furnish anything *to the*

*contractor,* which we think is requisite to place him in the second class." It was held that the plaintiff in that case could not recover.

In *Atchison, T. & S. F. R. Co. v. Cuthbert,* 14 Kan. 212, where this statute was before the court, it was said: "Now, in this case a purely statutory liability is sought to be enforced. Independent of the statute, there is no law or reason for making the railroad company responsible for the debts of Oxelson & Riney. Hence, a party claiming under this statute must show all facts necessary to bring his case within its terms."

In *Parkinson & Co. v. Alexander,* 37 Kan. 110, it was held: "Laborers, mechanics and materialmen furnishing work or materials in the construction of a railroad are so protected that they may recover against * * * the railroad company where no bond is given, for everything furnished by them which goes into the construction of the railroad, whether such laborers, mechanics or materialmen are employed by the contractor, or by a subcontractor or by a sub-subcontractor; but persons furnishing only provisions, or goods which do not go into the construction of the railroad, are not so protected, unless such provisions or goods are furnished to the contractor himself."

In *Mann v. Burt,* 35 Kan. 10, it was held that the labor of teams is not protected, and where a man and his team were employed "for a certain price per day for the joint labor of both, and no agreement is made respecting the price or value of the personal services of the teamster, the debt will constitute a single and indivisible demand for which the railroad company is not chargeable."

The supreme court of Kansas having thus interpreted the section of the statute in question, this court should follow such interpretation. The whole purport of the section is to protect laborers, mechanics and materialmen, and the words, "or to any person to whom any part of such work is given," should be read in connection with the words which immediately follow, "incurred in carrying on such work." These are the debts covered, and not the debt of an original contractor to a subcontractor. The plaintiff

himself testified on the trial as follows: "Q. Your bills that you contracted down at Carden are all paid, aren't they? A. I don't know that they are all paid. Q. Don't you know, as a matter of fact, they are all paid? A. I don't know that they are all paid, I know part of them is paid; yes, sir. Q. Well, aren't they all paid? You don't owe any teamsters anything down there, do you? A.. No, sir; the laborers have all been paid. Q. The laborers have all been paid? A. Yes, sir. Q. The teamsters have all been paid? A. Yes, sir. Q. Your material bills have all been paid? A. Yes. Q. And the bills for your supplies have all been paid? A. Well, I don't know. Q. Don't you know that the very last vestige was settled in a lawsuit down in Marysville, when Wood, Bancroft & Doty paid it? A. I don't know that they have all been paid in full. Q. What did you say? A. I can't say that they are all paid, because I don't know. Q. Now, so far as you have heard, or learned, all these materialmen, or laborers, or supply men, none of them are calling on you now for any money? A. No. Q. Don't you know that they have all been paid? A. I don't know that they have all been paid, I never had no notice that they have all been paid. Q. Now, you did know that a few months ago a judgment was rendered down there? A. Yes, sir. Q. And paid by Wood, Bancroft & Doty? Do you know that Wood, Bancroft & Doty paid that judgment? A. They paid one judgment. Q. Now, you are not suing in this case in order to get money to pay any bills down there, or on behalf of any of these materialmen, supply men, or laborers and mechanics? (Objected to as immaterial, irrelevant, incompetent, and not the proper cross-examination. Sustained. Exceptions.)"

. It appears from the evidence, without dispute, that Wood, Bancroft & Doty had taken up the work where the plaintiff left it, and finished it according to the contract with the railroad company; that they had paid all the claims of laborers, mechanics and materialmen, and all other claims of every kind and nature which had been made

against Finegan. Finegan only sought to recover against Wood, Bancroft & Doty for the labor performed by his teams and the profits which he claimed would have accrued to him had he completed his contract.· It thus appears that no cause of action existed in favor of the plaintiff and against the railroad company, and the court erred in refusing to instruct the jury to return a verdict in its favor. It also follows that no cause of action existed in favor of the plaintiff and against the railroad company when the suit was brought, and that the defendant railroad company was joined as a defendant with Wood, Bancroft & Doty in order to obtain service upon that firm in Jefferson county, and the court had no jurisdiction to proceed against Wood, Bancroft & Doty. The judgment as to them must also be reversed.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

LETTON, J., dissenting.

The conditions in the bond taken by the railroad company vary widely from those required by the Kansas statute, and it therefore failed to comply with that statute. By the provisions of the statute, if the company fails to take the statutory bond, it becomes liable to pay "all just debts due to such persons or to any person to whom any part of such work is given." While this language is not entirely clear, it is difficult to see what meaning can be given to it unless it means debts due from the contractor to a subcontractor. It is a common expression to say that work "is given" to a contractor or to a subcontractor.

We have been cited to no Kansas case which has construed this language, or which holds that liability to a° subcontractor is not included by this statute. The most reasonable view is, it seems to me, that the intention was to include subcontractors.

ROSE and SEDGWICK, JJ., concur in this dissent.