## WALBRIDGE v. NEW YORK ALASKA GOLD DREDGING CO.
### No. 3054.

Fourth Division.
April 23, 1928.

John A. Clark, of Fairbanks, for plaintiff.
Harry E. Pratt, of Fairbanks, for defendant.

CLEGG, District Judge.

This is a suit in equity to foreclose an alleged lien under the laws of Alaska with reference to or conferring on laborers and miners a right to lien for work and labor.

On behalf of the plaintiff, it is alleged that he was employed by the defendant company, which is a corporation organized and existing under and by virtue of the laws of the state of Delaware and engaged in the mining business in the territory of Alaska. The complaint shows the plaintiff was employed by a resolution of the board of di-

rectors of that company in the year 1922 as superintendent and general manager of the business and properties owned by the corporation in the Bethel precinct, Fourth division, Alaska, and that his salary was to be $600 per month, and was to continue indefinitely or until he ceased the employment or the company, by its board of directors, resolved otherwise.

He acted in that capacity from the time of his appointment, according to the complaint, until the 5th day of January, 1928, and at that time filed the claim of lien, consisting of practically three pages of typewriting describing the numbers of the claims owned by the company, for something over $19,000 against all the properties of the company situated in said precinct, and also upon its dredge situated on this property and buildings used in mining.

The claim of lien, so far as the legal requirements are concerned to be observed by a lien claimant, is almost exact, except, of course, it shows the employment of plaintiff on the part of defendant company as superintendent and general manager, and it is for that character of services that he claims a lien.

This is a very important question, it seems, under our statute, but it must be governed entirely in its decision by the language of our Code extending a miners' and laborers' lien to miners and laborers.

Our Code has been amended by the territorial Legislature, and the last amendment, I think, is 1915 (Laws 1915, c. 13, § 1), and provides as follows:

"Every person who at the instance of the owner performs work or labor in, on or about a mine or mining claim in opening up, developing, sinking, drifting, stoping, mucking, shoveling, mining, hoisting or performs any other class or kind of work on, in or about a mine or mining claim necessary or convenient to the development, operation, working or mining thereof, or the extraction of the earth, rock, quartz, ore, minerals, or mineral bearing sands or gravels therefrom, or performs any work or labor in or about

such mine or mining claim tending to or assisting in the separation or reduction to a commercial value of the minerals contained therein, or thereon or extracted therefrom, shall have a lien on such mine or mining claim to secure the payment of the amount due for such work or labor."

Then follows in almost identical language another sentence or paragraph which confers a lien upon steam shovels, mills, or machines used in mining and dredges. And then it goes on and describes a third class of liens for those who assist, in substance, in the production of a dump, and later on the act specifies these three classes of liens which the act confers on those who are entitled to it under its language.

It is contended by the defendant who has filed a general demurrer to the complaint, that work such as is done by a superintendent and general manager of mining claims or of the business of this company in Alaska in connection with mining, as set forth in the claim of lien and as contained in the complaint, is not included in the language of this statute, and therefore such person is barred from filing or claiming a lien for such services.

It is also contended by the defendant in the demurrer that, even though he was entitled to a claim of lien, his claim of lien was made prematurely because it was prepared at a time when he had not ceased his employment.

On the other hand, it is contended by the plaintiff's attorney that the language of this Lien Act, which is chapter 13 of the Session Laws of Alaska 1915, at page 29, is broad enough to include superintendents and general managers of mines and mining properties.

It is also contended by the plaintiff that the language of the Lien Act, which requires the notice of lien to be filed after the rendition of the services or the cessation of the labor, brings him clearly within the terms of the statute with reference to the time at which the lien was filed.

Apparently the claim of prematurity of filing is not relied on by the defendant very much, and defendant desires real-

ly a decision of the court interpreting this lien statute and a statement by the court to say whether or not a superintendent of the business of the company and general manager of the company's business is entitled to a lien under this statute.

Supporting his contention that he is not, the defendant's attorney has cited a very strong case in the Supreme Court of Oregon, which is entitled Durkheimer v. Copperopolis Copper Company, reported in 55 Or. 37, 104 P. 895, 897.

The statute of Oregon, under which this decision is made by Judge McBride, is not at all dissimilar from our own statute, and commences the same way at least. It says: "Every person who shall perform labor upon * * * any mine, lode, mining claim * * * shall have a lien." Laws Or.1907, p. 294. And in the strongest language this Court holds that the words "labor on mines" means actual physical labor, except where other kinds of service are expressly mentioned in the statute. And it further says: "That the notice of lien must unequivocally show that the labor was actually performed upon the property."

Now a reference to our statute will show that in the first paragraph of the act referred to the language used is particular work or labor. In the second sentence of the act that I have referred to, it says: "Every person, who at the instance of the owner of any dredge, steam shovel, mill or machine used in mining, performs work or labor in any capacity requiring manual labor on."

That is the only place in these three different sections that I have referred to where the words "manual labor" is mentioned, but the title of the act says that it is "An Act to provide for the liens of Laborers and Miners," and in one place it says that it is the purpose of the act to secure the wages of the laborer and miner, and in the last section of the act the language used is as follows: "In as much as uncertainty and confusion exists because of existing laws relating to liens of miners and laborers in mines, an emergency is hereby declared to exist, and this Act shall

take effect and be in force from and after its passage and approval." Section 16.

Now in this case from the Supreme Court of the state of Oregon that I have already referred to, there is discussed the decision of the Supreme Court of the United States in the case of Flagstaff Silver Mining Co. v. Cullins, 104 U.S. 176, 26 L.Ed. 704, which was taken to that court from the state of Utah (2 Utah, 219), in which the Supreme Court held that the plaintiff, Cullins, who was working as the foreman of the mine and at the same time had the authority to hire and discharge employees, was entitled to a lien for his services, but in that case the Supreme Court of Oregon points out that he claimed his lien, not as a foreman or superintendent, but as a workman or laborer. The Supreme Court of Oregon says: "It will be noticed that Cullins did not claim a lien as superintendent or manager, but as a laborer." It says: "The business of a superintendent is to superintend, to direct, and of a general manager, to generally manage, control, and supervise a business." And it goes on to a further discussion, and the Supreme Court of Oregon strikes a clear distinction between that case and the case which they were deciding.

That is the only case that really deals with the question from the standpoint of the defendant, and I think it deals with it fully and decisively.

Now in the case of Pioneer Mining Company v. Delamotte, 185 F. 752, 755, discussing a lien or a number of liens filed under the original act of Alaska, the Circuit Court of Appeals for the Ninth Circuit says: "The miner's lien can be acquired only for such labor as is contemplated by the statutes, and only by those persons to whom the statute plainly gives it."

Now certainly this statute that we are discussing does not plainly give a lien to superintendents and general managers. It expressly limits it to laborers and miners.

In 17 Ruling Case Law, p. 600, § 7, it is stated: "Statutory liens cannot be extended by the Courts to cases not provided for by the statute."

The lien statement filed by the plaintiff in this case shows that, in addition to a salary, he had the authority from the company to use large sums of money belonging to the company by way of expenses, and certainly he is in a different and extraordinary condition as compared with the ordinary miner or laborer, with a salary of $600 and the right to use as much of the company's money as he sees fit in lieu of his personal expenses. And I do not think the intention of the Legislature was to confer a lien upon a person who is superintendent and general manager, especially so when it makes no mention of him in the statute which confers the right to file a lien to laborers and miners.

The services which this superintendent and general manager, the plaintiff in this case, performed, were more in the nature of an executive officer, and he is entirely on a different footing, according to the authority from the Supreme Court of Oregon, than a person who is compelled to earn his daily bread by honest toil, we will say.

The demurrer will be sustained, and it is my judgment that the only right of the plaintiff is to get a personal judgment against the company.