(October 4, 1911.)

# THE MINE AND SMELTER SUPPLY CO., Respondent, v. IDAHO CONSOLIDATED MINES CO., LTD., and COMMERCIAL AND SAVINGS BANK OF RACINE, WISCONSIN, Appellants.

[118 Pac. 301.]

MATERIALMAN'S LIEN—LIEN FOR MINING MACHINERY AND MATERIALS—
CONTRACT FOR MATERIAL AND SUPPLIES—CONTINUING CONTRACT—
BURDEN OF PROOF—SUFFICIENCY OF FINDINGS.

(Syllabus by the court.)

1.  A lien for materials and supplies furnished in the construction, alteration or repair of buildings or mining structures or improvements relates back to the date of commencing to furnish the materials therefor.

2.  Where a mining company had an open and running account with a mine and smelter supply company, and for the purposes of procuring materials and supplies in order to construct mills and equipments for the operation of the mines they made arrangements with the supply company whereby the mining company should have an extended credit sufficient to cover the materials and supplies necessary in the construction of the proposed works and improvements, and nothing was said with reference to the general open account that had been running, and there was no further understanding with relation thereto, it will be presumed that the extended credit was intended to cover all future purchases and account as one account thereafter, rather than that there should thereafter be two accounts and two credits running at one and the same time; and in the absence of proof and showing to the contrary, a lien should be allowed for the whole account as one continuing contract or transaction for the one general purpose.

3.  The facts of this case examined and reviewed, and *held* that they are sufficient to support a finding and judgment that the materials and supplies were furnished for the construction of a mill and the equipments and improvements to be used on and in connection with a mining claim, and that the same constituted one continuing contract, and that the materialman was entitled to a lien dating from the time of commencing to furnish materials therefor.

4.  Where a trial court has made findings in a case which are sufficient to support the judgment and which are contrary to and inconsistent with any finding that might have been made on any other issue in the case which could have been favorable to the adverse party, it will be presumed that had the court made findings on such other issue, that they would have been against the losing party on such issue.

APPEAL from the District Court of the Fourth Judicial District for Blaine County.   Hon. Edward A. Walters, Judge.

Action to foreclose a materialman's lien for materials and supplies furnished in constructing mills and furnishing and supplying a mining claim.   Judgment and decree for the plaintiff and the defendant mining company and the mortgagee appeal.   *Affirmed.*

Richards & Haga, and Sullivan & Sullivan, for Appellants.

Where the court fails to find on all the material issues made by the pleadings, the judgment will be reversed unless a finding made upon such issues would not affect the judgment entered.   When affirmative allegations are set up as a defense in an answer, a finding upon the issue thus presented is imperative, and a failure so to find is reversible error.   (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Brown v. Macey,* 13 Ida. 451, 90 Pac. 339; *Later v. Haywood,* 14 Ida. 45, 93 Pac. 374; *Uhrlaub v. McMahon,* 15 Ida. 346, 97 Pac. 784, and earlier Idaho decisions.)

"If the work was done or the materials furnished for separate and distinct purposes or under distinct contracts or orders, though in executing one and the same contract with the owner, there is no presumption of a continuous account, and the right of lien must date from the time of doing the different jobs of work, or furnishing the different parcels of materials." (Jones, Mechanics' Liens, sec. 1435; *Roebling Sons v. Bear Valley Irr. Co.,* 99 Cal. 488, 34 Pac. 80; *Holmes v. Ritchet,* 56 Cal. 307, 38 Am. Rep. 54; *Cohn v. Wright,* 89 Cal. 86, 26 Pac. 643; *Weatherly v. Van Wyck,* 128 Cal. 329, 60 Pac. 846.)

"The materialman cannot follow the material and fix a lien for its contract price on the premises wherever it may happen to be used." (Bloom, Mechanics' Liens, sec. 82.)

The intention that the material when sold should go into a certain building must have been such an intention that, by virtue of it, in some measure, credit was extended. (*Eisenbeis v. Wakeman*, 3 Wash. 534, 28 Pac. 923; *Odd Fellows' Hall v. Masser*, 24 Pa. 507, 64 Am. Dec. 675.)

Under ordinary sales on credit a lien will not attach because of the absence of that vital qualification of the statute of an agreement as to the particular use to which the goods shall be put and the particular building in which they shall be used. (*Colo. Iron Works v. Riekenberg*, 4 Ida. 705, 43 Pac. 681; *Wagner v. Darby*, 49 Kan. 343, 33 Am. St. 369, 30 Pac. 475; *Wilson v. Howell*, 48 Kan. 150, 29 Pac. 151; *Noar v. Gill*, 111 Pa. 488, 4 Atl. 552.)

Where there are two separate and distinct contracts for the erection of a building and the materialman knows there are two contracts, he cannot tack the last contract to the first so as to procure a lien for all the materials furnished under the separate contracts. (*Valley Lbr. & Mfg. Co. v. Driessel*, 13 Ida. 680, 93 Pac. 771, 15 L. R. A., N. S., 299.)

Johnson & Johnson, for Respondent.

No separate and distinct contracts were shown as in the case of *Valley Lumber Co. v. Driessel*, 13 Ida. 680, 93 Pac. 771, 15 L. R. A., N. S., 299, cited by appellant, where there was a contract for a house which was completed and afterward a new and separate contract for a porch under which materials were commenced to be furnished fifty-nine days after the house was completed.

The question of priority is settled by sec. 5114, Rev. Codes. Under this section the lien relates back to the date when the materials were commenced to be furnished. (*Pac. States etc. Co. v. Dubois*, 11 Ida. 319, 83 Pac. 513; *Pac. Mutual Life Ins. Co. v. Fisher*, 106 Cal. 224, 39 Pac. 758; *Avery v. Clark*, 87 Cal. 619, 22 Am. St. 272, 25 Pac. 919; *McClain v. Hutton*, 131 Cal. 132, 61 Pac. 273, 63 Pac. 182, 622; *Soule v. Borelli*,

80 Conn. 393, 68 Atl. 981; *Milner v. Norris,* 13 Minn. 455; *Fields v. Daisy Gold Min. Co.,* 25 Utah, 76, 69 Pac. 528 (under same statute as ours).)

AILSHIE, J.—This is a controversy between a lien claimant for materials furnished and a mortgagee as to the validity and priority of a lien claim. The appellant, the Commercial and Savings Bank of Racine, Wis., holds a mortgage of $250,000 against the Idaho Consolidated Mines Co., which was filed of record on the 10th day of February, 1909. The respondent, the Mine and Smelter Supply Company, claims a lien on the property covered by the mortgage for materials and supplies furnished between the 5th day of November, 1907, and the 17th day of September, 1909, for the construction of mills and assay office and equipping the mill and mine. Judgment and decree were entered establishing the respondent's lien and its priority over the appellant's mortgage, and this appeal has been prosecuted.

No question arises over the execution of the mortgage or its validity or the amount due thereon. Neither is there any dispute over the amount due to the respondent. The only real question to be determined is whether the material and supplies furnished were supplied under such terms and conditions, or under such a contract, as will bring the case within the purview of the statute and entitle the respondent to a lien therefor. The whole matter reduces itself down to more of a question of fact than law, and has necessitated a very diligent examination of the entire evidence in the case. Our examination of the facts as disclosed by the record has not been as illuminating as a record ought to be in such a case. Some of the facts which we consider very essential and for which we have searched diligently are so obscured by verbiage and some seeming evasions that we find ourselves in doubt as to the true situation in several respects. We gather, however, in substance the following conditions from the record:

The Idaho Consolidated Mines Co., which was the owner of a large mining property commonly known as the Minnie Moore Mine, in Blaine county, was working and operating the mine,

and for some seven or eight years had been running an open account with respondent for supplies and materials used in repairing and operating the mine. About July, 1907, Irvin E. Rockwell, the company's manager, entered into negotiations with the respondent for the purpose of securing a credit with the company sufficient to cover the purchase of such materials and supplies as would be necessary for the construction of a quartz-mill and the adjuncts thereto, and the equipping and supplying of an assay office, and such other works and equipments as were incident to or necessary in connection with such a mill and mine. The Mine and Smelter Supply Company sent its agent to the company's mine, where he looked over the situation and made estimates as to the probable expense that would be incurred in the work proposed, and he reached the final conclusion that it would cost at least $15,000. It was thereupon agreed that the company might go ahead with the construction of its mill and the equipping of the mill and mine as proposed, and that the respondent company would furnish the materials and carry the account from one to two years. The mining company accordingly began sending in its orders for various materials, supplies and machinery, and orders for various items were sent from time to time for a period covering nearly two years. The orders always designated the particular things desired, but, with the exception of a very few items, it does not appear that any designation was made in the orders as to what the items were for, that is, whether they were for the mill or the mine or were ordinary running supplies. The plans for the mill were changed at least once, if not a couple times. It seems that in the first place the plan contemplated a two-unit mill, or a wet and dry side mill. In the course of the work, however, the mining company secured a new engineer, and the company finally determined on a different process for the unit B or the wet side of the mill. This was finally determined upon some six months after the contract had been made whereby the mining company was to secure the credit from respondent. The work was carried along and finally completed, and in the meanwhile the mining company had ordered

equipment and supplies aggregating $30,506.83. During the same time, it paid $18,302.16. There is no controversy here but that the lien, if any exists at all, relates back to the date of the commencement of the work or improvement or the commencement to furnish the material. (Sec. 5114, Rev. Codes; *Pacific States etc. Co. v. Dubois,* 11 Ida. 335, 83 Pac. 513.)

The question now arises as to whether this whole amount can be properly claimed as having been furnished under the contract for the construction and equipment of the mill and assay office and such work as was contemplated at the time the credit was granted, or whether a part of it only was furnished on that contract and the balance on a general open, current account for general supplies. The appellant contends that $7,655.99 of the sum here claimed was furnished on what is designated "General Sales Account," and was never supplied under the contract for materials and supplies on the mill contract, and that the balance, $4,548.68, remains due on what is designated the "Mill Equipment Account," and that the company failed to file its lien within the statutory time after the last item was furnished, and that it can therefore have no lien for this balance. The record discloses that the respondent company, after the orders had reached some twenty or twenty-two thousand dollars, began protesting to the mining company that the account was becoming too large and that it must be reduced, and that they could not allow the indebtedness to increase or fill orders on hand until some arrangement might be made. So far as the supply company is concerned, it appears that all orders furnished were furnished on one and the same account. It is admitted that the account was paid off and all indebtedness was satisfied for articles up to the 5th day of November, 1907. It is likewise admitted that the articles and materials covered by this action were furnished between the 5th day of November, 1907, and the 17th day of September, 1909. The last article appears to have been furnished on the latter date. The lien was filed November 26, 1909. This brings the filing of the lien within the statutory time, and if the materials and articles herein for which this

claim is filed come properly within the lien law and the contract or agreement of the parties, then the lien should be allowed.

Rockwell, the managing and purchasing agent for the mining company, testified as follows: "It is a fact that between the 5th day of November, 1907, and the 17th day of September, 1909, that I ordered goods and supplies from the Mine and Smelter Supply Co. and that the same haven't been paid for, and that involved a total amount of just $12,204.67; and it is a fact that all goods ordered prior to that time had been paid for by our company." Now, it appears from the evidence of Rockwell and his bookkeeper that the books of the mining company were kept so as to show two accounts, one designated as "Mill Equipment Account" and the other as "General Sales Account." It is claimed by the appellant that the articles purchased and entered in the mill equipment account were the only articles and material that properly comes within the terms of the contract and for which a lien could be had, and that those items entered under the general sales account were an open and current account and not intended to be used or applied under the special contract for the mill supplies, and that the respondent was not entitled to any lien for that claim. As above observed, however, the orders did not indicate what particular account or any particular account on which such orders were made, and all the information that the respondent company could gather as to the account on which the order was made was from the nature of the article ordered. The supply company seems to have carried the whole matter as one account and to have so regarded the same.

The evidence of the various witnesses, when all taken together, while by no means satisfactory, does nevertheless incline us to the belief that the supply company was filling these orders on the assumption and with the understanding that it was all to be charged on the one general credit for which the contract had been made, and that although the credit exceeded the sum of $15,000, the original estimate, they still had a right to assume, and must have so understood, that the various or-

ders were to be used in the building and construction of the mill and other equipment and appliances used in connection therewith, and in the improvement and development of the Minnie Moore mine. It appeals to us as a continuing contract and transaction which properly comes within the purview of the lien statute, sec. 5110, Rev. Codes. This statute provides, among other things, as follows: "Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of, any mining claim, . . . . or who performs labor in any mine or mining claim, has a lien upon the same for the work or labor done or materials furnished," etc. Under this statute, the intention of the parties with reference to the question of a lien is immaterial and nonessential. The essential fact is: Was the material furnished or the labor performed, and if so, was it furnished or performed in the manner and under the terms and conditions designated by the statute? If so, the party is entitled to a lien as a matter of law.

It seems to us that this transaction may properly fall within the rule suggested by the supreme court of Utah in *Fields v. Daisy Gold Mining Co.*, 25 Utah, 76, 69 Pac. 528, wherein the court said: "In general, we consider the proper rule to be that, when all the items in the account relate to one continuous transaction between the same parties, although the goods were delivered on separate orders, and at different dates, within short intervals of each other, and the dealings of the parties indicate an expectation to continue such business relations, the transactions constitute a continuous running account, regardless of intervening irregular monthly balances in the account, which dates from the date of the last item delivered, and relates back to the time of the first delivery of material under that course of dealing or contract shown. This presumption may be overcome and rebutted by the nature and course of dealing by the parties or by facts shown. If the materials were furnished for separate and distinct purposes, under distinct separate contracts or orders requiring cash payment under circumstances tending to rebut dealings of a continuous nature, then there would be no presumption of a

continuous account, and, in the absence of an express contract, a right for a lien, if any, would date from the time of the commencement to furnish materials for the different separate contracts on each separate order." (See *Valley Lumber Co. v. Driessel,* 13 Ida. 680, 93 Pac. 771, 15 L. R. A., N. S., 299, opinion on petition for rehearing.)

It does not appear from the record in this case that the mining company when making orders for material and supplies ever designated to the supply company that any particular order should be charged on the general sales account or the open and current account, or that any other order should be designated as a mill equipment account. All the orders were made apparently on the same account, and there was nothing in the orders to indicate to the supply company that they were not all intended to be upon one and the same account or contract; and the mere fact that the mining company may have kept separate accounts on its books would not bind the supply company, unless knowledge of this was in some way brought home to the latter company and it was shown to have been acting under separate contracts.

This court, in considering a kindred question upon petition for rehearing in *Valley Lumber etc. Co. v. Driessel,* 13 Ida. 681, 93 Pac. 771, 15 L. R. A., N. S., 299, said:

"When the plaintiff, who is seeking to foreclose his lien, establishes the fact that he furnished the material to the contractor under one arrangement and contract with him, and has presented sufficient evidence to make his case on that theory, then if the defendant seeks to defeat the right of recovery on the ground that there were two separate and distinct contracts, after showing their existence, he should be required to either show that the materialman had actual knowledge that two contracts existed, or else prove such facts and circumstances either by way of lapse of time, cessation of work, occupation of the building and premises by the owner, settlement of accounts, or other circumstances that would amount to constructive notice to the materialman and put him on his inquiry to ascertain that two contracts did in fact exist."

In that case it was sought to defeat the lien on the ground that the material was furnished under a separate and distinct contract, and that in substance is the proposition here. It is here claimed that $7,655.99 of this account was furnished in materials on an open and current account which was separate and distinct from the mill equipment account. Now, looking at the reason and justice of the thing, which must control in the determination of the case, it would seem unreasonable to suppose that the supply company, which had been carrying the mining company along on a general and current account from month to month, should consent to give an extended and special credit for sufficient material and supplies to build the mill and the equipments that were involved in this transaction exceeding $15,000, and at the same time continue a separate, open and current account from month to month covering a period of nearly two years on which no payment was made at all, and which account in that time exceeded the sum of $7,000, when at the same time the special credit or account had exceeded the original estimate by more than $7,000. We cannot understand how the mining company, in the absence of a special agreement to that effect, could be supposed to have been carrying two such running credits. On the other hand, it is not difficult to understand that in the course of construction and changing of plans and the addition of modern improvements and devices, the materials and supplies for the work should mount up from the original estimate of $15,000 to nearly double that amount. After the company had extended credit to the amount of the original estimate and the mill and equipments were not yet completed so that they could be utilized in the working of the mine, it became almost necessary for the company to continue and extend the credit in order that the property might be completed so that it would become useful to the debtor and enable it to resume its operations and take out the money to pay the debt.

While the record is not at all satisfactory as to the real facts and understanding involved in this transaction, in the light of the findings of the trial court in favor of the respondent and of the provision of sec. 5150 of the Rev. Codes, which

commands the courts to give to the lien law a liberal construction with a view, not to defeating a lien but to effecting the purposes and objects of the statute and giving a lien to one who has furnished materials or supplies, we are convinced that the judgment in this case should not be disturbed.

Complaint has been made of the alleged failure of the court to find on a number of issues tendered. Our examination and comparison of the issues joined and the findings made fail to disclose any material issue not covered by the findings. It is unnecessary to make a specific finding on a given issue where the findings of the court are inconsistent with a finding on that particular issue which would have been favorable to the complaining party. In other words, if the court has made a finding in the case which is contrary to and inconsistent with a finding on any other issue favorable to the complaining party, it must be presumed at once that the court, had it found on that particular issue, would have found against the party complaining of the failure to make a finding. (*Bowers v. Cottrell*, 15 Ida. 221, 96 Pac. 936; *Brown v. Macey*, 13 Ida. 451, 90 Pac. 339.)

The judgment should be affirmed, and it is so ordered.

Costs awarded to respondent.

Stewart, C. J., concurs.

SULLIVAN, J., Dissenting.—I dissent, first, on the ground that the lien was not filed within the time required by law for the balance due on the mill contract, namely, $4,548.68; and second, that under the mechanics' lien law of this state, the goods sold on open, general account for the working and operation of the mine, where payments are to be made from month to month, are not a lien upon the mine.